## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JORGE JOAQUIN MARTINEZ,<br>Appellant, | DOCKET NUMBER<br>NY-0752-19-0137-I-2 |
| v. | |
| DEPARTMENT OF<br>TRANSPORTATION,<br>Agency. | DATE:  August 23, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Jorge Joaquin Martinez</u>, San Juan, Puerto Rico, pro se.

<u>Katrina Velez</u> and <u>Sabrina E. Redd</u>, Esquires, Washington, D.C.,
  for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of this appeal.

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which sustained his removal.  For the reasons discussed below, we AFFIRM the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

administrative judge's findings that the agency proved its charges and the appellant failed to prove his affirmative defenses of discrimination, equal employment opportunity (EEO) reprisal, and a due process violation. We MODIFY the administrative judge's findings as to why the appellant failed to prove his affirmative defense of reprisal for disclosures protected by 5 U.S.C. § 2302(b)(8) and VACATE her findings as to nexus and penalty. We GRANT the appellant's petition for review, and REMAND the case to the field office to adjudicate an affirmative defense of reprisal for engaging in activity protected by 5 U.S.C. § 2302(b)(9)(C), in accordance with this Remand Order.

## BACKGROUND

The appellant most recently held the position of Hazardous Materials Specialist for the agency's Federal Motor Carrier Safety Administration (FMCSA). *Martinez v. Department of Transportation*, MSPB Docket No. NY-0752-19-0137-I-1, Initial Appeal File (IAF), Tab 1 at 7; *Martinez v. Department of Transportation*, MSPB Docket No. NY-0752-19-0137-I-2, Appeal File (I-2 AF), Tab 8, Initial Decision (ID) at 1. His duty station was in Puerto Rico. IAF, Tab 1 at 7.

A detailed description of the FMCSA and the work it does is included in the initial decision, and that description does not appear to be in dispute. ID at 4-6. Broadly speaking, the FMCSA has offices throughout the country, and its mission is to "reduce crashes, injuries and fatalities involving large trucks and buses." *E.g.*, IAF, Tab 8 at 35. The FMCSA's Hazardous Materials program is designed to "minimize the inherent risks associated with the transportation of [hazardous materials] on our Nation's highways." *Id*. Accordingly, some duties of a Hazardous Materials Specialist, such as the appellant, include providing assistance and guidance to interested parties regarding the transportation of hazardous materials, conducting hazardous materials compliance reviews, conducting investigations, and participating in other activities to improve motor

carrier safety. *E.g.*, IAF, Tab 13 at 36; ID at 6-7. The agency has described the Hazardous Materials Specialist position as one that involves extensive travel throughout the country. Hearing Transcript, Day 1 (HT1) at 141-42, 144-45 (testimony of Associate Administrator for Field Operations); ID at 8.

In January 2019, the agency proposed the appellant's removal for failure to follow instructions, insubordination, and failure to maintain a condition of employment. IAF, Tab 6 at 18-23. After the appellant responded, the deciding official sustained all the underlying charges and specifications, effectuating the appellant's removal in March 2019. *Id*. at 6-11.

The appellant filed this timely appeal to challenge his removal. IAF, Tab 1. The administrative judge developed the record and held a hearing before affirming the removal action. HT1; Hearing Transcript, Day 2 (HT2); Hearing Transcript, Day 3 (HT3); ID at 1-2. First, she found that the agency proved each of the specifications underlying each of its charges. ID at 10-27. The administrative judge also found that the agency proved the requisite nexus. ID at 27-28. Next, she found that the appellant failed to prove his affirmative defenses of whistleblower reprisal, ID at 29-45, discrimination based on race, color, national origin, or age, ID at 45-54, and EEO reprisal, ID at 54-56, along with a claim of a due process violation, ID at 56-57. Lastly, the administrative judge found that the agency proved the reasonableness of its penalty. ID at 58-60.

The appellant has filed a petition for review. *Martinez v. Department of Transportation*, MSPB Docket No. NY-0752-19-0137-I-2, Petition for Review (PFR) File, Tab 1. The agency has filed a response, and the appellant has replied. PFR File, Tabs 3-4.

**ANALYSIS**

The administrative judge properly sustained the agency's charges.

The agency proposed the appellant's removal based on three charges—failure to follow instructions, insubordination, and failure to maintain a condition of employment—each of which had several underlying specifications. IAF, Tab 6 at 18-20. When the appellant responded, he argued that the agency's statutory and regulatory authority in Puerto Rico is less than its authority stateside; the agency was acting improperly with respect to its authority in Puerto Rico; and all his alleged misconduct stemmed from his refusal to do the same or his refusal to be treated differently than individuals who worked stateside, where the agency has additional authority. IAF, Tab 9 at 11-22, Tab 11 at 56-81. The deciding official rejected these arguments and sustained each of the charges and specifications. IAF, Tab 6 at 7-9.

In the instant appeal, the appellant presented similar arguments regarding the agency's authority. *E.g.*, IAF, Tab 1 at 5. He effectively admitted the factual underpinnings of the agency's charges: failure to follow instructions, HT3 at 131-37 (testimony of the appellant), insubordination, *id.* at 138-41, and failure to maintain a condition of employment, *id.* at 141-45. The appellant argued, however, that his conduct was justified because of the differences in the agency's authority between states and territories, such as Puerto Rico. *Id.* at 131-45. The administrative judge was not persuaded. ID at 10-27. She sustained each of the charges and underlying specifications. *Id.*

Before we turn to each charge, individually, we note that the parties agree that there are some differences between the agency's authority in a state compared to its authority in Puerto Rico. However, the parties have long disagreed about the extent of those differences and their impact on the appellant. *E.g.*, IAF, Tab 7 at 40-50. That disagreement is the basis for most of all the appellant's arguments in this appeal.

On the one hand, the agency has presented a consistent and persuasive explanation of its authority to the appellant and in concert with this appeal. For example, the agency submitted multiple memoranda from its legal department describing its authority in Puerto Rico—memoranda spanning many years—along with proof that it repeatedly provided the appellant with the same explanations throughout his tenure. *E.g.*, IAF, Tab 7 at 40, 50, 117-18, Tab 8 at 4-5, Tab 30 at 7, Tab 31 at 4-11, Tab 32 at 4-7. Generally speaking, the agency has explained that it has direct statutory authority to enforce the Hazardous Materials Regulations at 49 C.F.R. parts 171-180 in Puerto Rico. IAF, Tab 30 at 7, Tab 31 at 7 (citing, *e.g.*, 49 U.S.C. §§ 5102(12)(A), 5103). However, the agency does not have direct authority to enforce the Federal Motor Carrier Safety Regulations at 49 C.F.R. parts 390-97 in Puerto Rico in the same way it does for a state; the agency must instead condition certain funds on Puerto Rico's adoption and enforcement of those regulations. IAF, Tab 30 at 7, Tab 31 at 8 (citing, *e.g.*, 49 U.S.C. §§ 31101(4), 31102). Because of this distinction, the agency acknowledges that there are some activities—such as roadside inspections—that agency employees can perform in a state but not in Puerto Rico. *E.g.*, IAF, Tab 31 at 8.

On the other hand, the appellant has disputed these legal memoranda and other similar explanations from his chain of command. *E.g.*, IAF, Tab 9 at 11-13. Because the appellant is pro se, we have construed his pleadings liberally. *Melnick v. Department of Housing and Urban Development*, 42 M.S.P.R. 93, 97 (1989) (observing that parties without legal representation are not required to plead issues with precision), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table). Even so, his arguments about the agency's authority are difficult to follow. The appellant appears to suggest that other statutory provisions within Title 49 are inapplicable in Puerto Rico, and those statutes are somehow more authoritative than the statutory authority to which the agency has referred and on which it has relied. *E.g.*, IAF, Tab 9 at 11 (referencing "49 U.S.C. Chapter 5"); I-2 IAF,

Tab 3 at 4.  More importantly, to the extent that the parties agree that agency officials are not authorized to conduct some activities in Puerto Rico, including roadside inspections, the appellant's argument seems to be that the agency is somehow obligated to either (1) change the existing statutory and regulatory authority so that he can perform all the same day-to-day activities in Puerto Rico as coworkers who have a duty station in a state or (2) exempt him from those activities and the associated certification requirements, which can only be completed by traveling to a state.  *E.g.*, IAF, Tab 7 at 24-25, 40, 42, Tab 9 at 12.

*Charge 1, failure to follow instructions*

The agency's failure to follow instructions charge contained eight specifications, each of which concerned a separate instruction from November 2018.  IAF, Tab 6 at 18-19.  For example, specification 1 alleged that his supervisor instructed the appellant to complete a particular travel authorization for the purpose of conducting roadside inspections in Maryland, but the appellant failed to do so before the designated deadline.  *Id*. at 18.  Specification 2 alleged that he was given the same instruction again, after the appellant failed to meet the first deadline, but the appellant again failed to complete the travel authorization.  *Id*.  Specification 3 alleged that the supervisor completed the travel authorization after the appellant repeatedly failed to do so, and he instructed the appellant to travel to Maryland for the roadside inspections, but the appellant refused.  *Id*.

To prove a charge of failure to follow instructions, an agency must establish that the employee:  (1) was given proper instructions; and (2) failed to follow the instructions, without regard to whether the failure was intentional or unintentional.  *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 5 (2014).  Even where there is substantial reason to believe that an order is improper, an employee first must obey the order and then challenge its validity, except in "extreme or unusual circumstances" in which he would be placed in a clearly dangerous situation or which would cause him irreparable harm.  *Pedeleose v. Department of Defense*, 110 M.S.P.R. 508, ¶¶ 16-17, *aff'd*, 343 F. App'x 605

(Fed. Cir. 2009). This rule reflects the fundamental management right to expect that its decisions will be obeyed and its instructions carried out. *Id.*, ¶ 16.

The appellant admitted the underlying conduct for this charge but argued that he was justified in not following instructions because the instructions were improper. ID at 12; *e.g.*, HT3 at 131-37 (testimony of the appellant). The administrative judge was not persuaded. She found that, even if the appellant believed the instructions were not proper, the appellant was obligated to obey them, and then challenge their validity through proper channels. ID at 12-15.

On review, the appellant's arguments specific to charge 1 are limited. He states, without explanation, that the charge was a pretext for discrimination and reprisal. PFR File, Tab 1 at 10. In a similarly conclusory fashion, the appellant also states that he obeyed the agency's instructions and challenged them through proper channels for many years, and he questions how long he was obligated to continue doing so. *Id.* at 10-12.[2]

---

[2] In making these arguments and others, the appellant's petition for review references pleadings he submitted below. PFR File, Tab 1 at 10-12 (referencing IAF, Tab 71 at 5-11, 33-71, Tab 73 at 8-21). However, the portions of the record to which he refers consist of extensive allegations and arguments, rather than documentary evidence. IAF, Tab 71 at 5-11, 33-71, Tab 73 at 8-21. Those allegations and arguments then refer to countless other portions of the record, many of which are not easily identified. For example, in one of the first referenced pages of arguments from below, there are seven citations. IAF, Tab 71 at 6. And those citations do not simply provide us with a tab and page number from the electronic file, even though the appellant elected to register as an e-filer. IAF, Tab 1 at 2. Instead, the citations consist of references such as "RED color Tab, Exhibit A, Item 35." IAF, Tab 71 at 6. After extensive searching, we successfully located a table of contents that seems to correspond with the reference. IAF, Tab 13 at 4. Yet we were less successful in finding "Item 35" within that 430-page pleading because the pages are disordered. *Id.* at 256-57. Simply put, the appellant's argument on review refers us to arguments he presented below, where he referred to other items in the record that we are unable to locate. This is a pattern throughout his petition.

As previously stated, we have construed the appellant's pleadings liberally. But his failure to clearly direct us to supportive evidence was at his own peril. *See, e.g., Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992) (recognizing that a petition for review must be specific enough to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete record review); *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (explaining that before the Board

For this charge, the agency's authority in Puerto Rico, and the appellant's disagreement about that authority, is not particularly relevant. The various instructions that the appellant failed to follow concerned travel to Maryland, for the completion of assignments there. IAF, Tab 6 at 18-19. Although it is evident that the appellant objected to traveling, and he thought it was unfair that other employees with a duty station stateside were not burdened by travel in the same way that he was, as an employee with a duty station in Puerto Rico, we found nothing to demonstrate that the agency's instructions were improper and we found nothing to show that compliance with the instructions would have placed him in a clearly dangerous situation or caused him irreparable harm. IAF, Tab 71 at 5-11, 33-71, Tab 73 at 8-21. In fact, the appellant's argument that he had followed instructions and challenged them through proper channels for many years lends support to the conclusion that compliance was neither dangerous nor harmful. Therefore, the appellant has not shown that the administrative judge erred in sustaining this charge.

*Charge 2, insubordination*

The agency's insubordination charge included three specifications. IAF, Tab 6 at 19-20. Specification 1 alleged that the appellant was given repeated instructions to complete roadside inspections, between November 2018 and January 2019, and the appellant did not comply. *Id*. at 19. Specification 2 alleged that he was given repeated instructions to complete compliance reviews throughout the same period, but the appellant similarly did not comply. *Id*. Specification 3 alleged that the appellant was twice instructed to attend a particular staff meeting and did not comply. *Id*. at 19-20.

---

will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect and identify the specific evidence in the record which demonstrates the error); 5 C.F.R. § 1201.114(b) (requiring that a petition for review state a party's objections to the initial decision, including all of the party's legal and factual arguments, and be supported by specific references to the record and any applicable laws or regulations).

Insubordination is the willful and intentional refusal to obey an authorized order of a superior officer which the officer is entitled to have obeyed. *Southerland v. Department of Defense*, 117 M.S.P.R. 56, ¶ 15 (2011), *overruled on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31. As previously mentioned, the appellant admits that he did not obey the orders described in this charge, indicating that he refused to comply because he was seeking corrective action for his ongoing dispute about the agency's authority in Puerto Rico. HT3 at 137-41 (testimony of appellant). The administrative judge considered the appellant's rationale but did not find it persuasive. ID at 16-19.

On review, the appellant argues that this charge was also a pretext for discrimination and reprisal. PFR File, Tab 1 at 13. However, he does not present any substantive arguments to dispute that he engaged in the conduct described. He has, therefore, not presented any basis for us to find that the administrative judge erred in sustaining the insubordination charge.

*Charge 3, failure to maintain a condition of employment*

The agency's failure to maintain a condition of employment charge included two specifications. IAF, Tab 6 at 20. Specification 1 alleged that the appellant did not conduct the commercial motor vehicle roadside inspections required for certification during the 2017-2018 performance year, despite numerous extensions. *Id*. Specification 2 alleged that he did not conduct the motor carrier compliance reviews required for certification during the same period, despite numerous extensions. *Id*.

This charge consists of two elements: (1) the requirement at issue is a condition of employment; and (2) the appellant failed to meet that condition. *Gallegos v. Department of the Air Force*, 121 M.S.P.R. 349, ¶ 6 (2014). Absent evidence of bad faith or patent unfairness, the Board defers to the agency's requirements that must be fulfilled for an individual to qualify for appointment to, or to retain, a particular position. *Id*.

The administrative judge found that the agency met this burden for both specifications of its charge. ID at 19-27. Broadly speaking, she credited the agency's explanations of its conditions of employment over the appellant's assertions that the conditions do not apply to him since his duty station is in Puerto Rico. *Id*.

On review, the appellant once again asserts that the charge was a pretext for discrimination and reprisal. PFR File, Tab 1 at 15. He also argues that the certifications were not required because they were not listed in documents such as the vacancy announcement for his position or his position description. *Id*. at 15-16 (referencing IAF, Tab 8 at 15-34, Tab 13 at 36-43, Tab 60 at 5-7). However, as the administrative judge recognized, the agency presented documentary and testimonial evidence about how its certification requirements have long been a condition of employment and how the appellant was repeatedly informed of the same. ID at 20-26; *see, e.g.*, IAF, Tab 8 at 15-27 (2012 certification policy), Tab 60 at 5-7 (2015 certification policy), 8-31 (2017 operational policy for inspector training and certification). Therefore, we are not persuaded by the appellant's argument.

Alternatively, the appellant seems to suggest that the certifications concerned activities that agency employees are not authorized to conduct in Puerto Rico, so he need not be certified. PFR File, Tab 1 at 8-9, 16-17. However, the agency explained that the appellant's position was one in which he was expected to engage in extensive interstate travel and work, like other Hazard Materials Specialists, so the certification remained relevant to him and his position, even though his duty station was in Puerto Rico. *E.g.*, HT2 at 86, 88-89, 120-22 (testimony of Hazardous Material Program Manager), 262-63 (testimony of Division Administrator). The appellant also argues that if he were required to be certified, the agency was obligated to find a way for him to do so in Puerto Rico, or it should have reassigned him somewhere in which he could certify at his duty station. PFR File, Tab 1 at 17-18. Otherwise, according to the appellant,

the agency is discriminating against him, as compared to those who work stateside and can meet their certification requirements closer to home. *Id*. This argument also fails. The appellant has presented nothing more than a conclusory assertion—one that is silent to the agency's explanations of how he cannot perform certain functions in Puerto Rico and how stateside employees also travel to conduct these day-to-day activities and meet their certification requirements. ID at 22-24; *see, e.g.*, HT1 at 190-91 (testimony of Associate Administrator for Field Operations), 266-67, 291-93 (testimony of Field Administrator). In sum, the appellant has not established any basis for us to disturb the administrative judge's conclusion that the agency proved each of its charges.

<u>The appellant failed to prove his discrimination, EEO reprisal, and due process claims.</u>

As mentioned above, the administrative judge found that the appellant's discrimination, EEO reprisal, and due process claims all failed. ID at 45-57. Because the appellant has at least alluded to these matters on review, we will briefly discuss each.

*Discrimination and EEO reprisal*

The administrative judge considered but rejected the appellant's allegations of discrimination based on race, color, national origin, and age. ID at 45-56. She also considered and rejected his claim of EEO reprisal regarding complaints he filed with the Equal Employment Opportunity Commission and in U.S. District Court between 2006 and 2011. ID at 54-56. In analyzing the appellant's discrimination and EEO retaliation claims, the administrative judge identified the legal standard set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), and concluded that the appellant did not prove that a prohibited consideration was a motivating factor in the removal decision. Following the issuance of the initial decision in this case, the Board issued *Pridgen*, 2022 MSPB 31, ¶¶ 20-25, 30, which overruled parts of *Savage* and clarified the proper analytical framework to be applied to affirmative defenses of Title VII

discrimination and retaliation. Nonetheless, the outcome of this appeal under *Pridgen* would be the same as that arrived at by the administrative judge. Notably, under *Pridgen*, to obtain any relief, the appellant must still show, at a minimum, that the prohibited consideration was a motivating factor in the agency's decision to remove him, *Pridgen*, 2022 MSPB 31, ¶¶ 20-22. As further explained below, the appellant's contentions on review do not provide a basis for disturbing the administrative judge's finding that the appellant failed to make this showing.[3]

In short, for the discrimination claims, the administrative judge found that the appellant conflated differences between he and stateside coworkers that were required by law, due to the agency's more limited authority in Puerto Rico, with unlawful discrimination. ID at 48-54. For the EEO reprisal claim, she found that agency officials involved in the appellant's removal had limited knowledge of his protected activity, and the appellant presented no substantive or persuasive basis for concluding that the activity was a motivating factor in his removal many years later. ID at 54-56.

On review, the appellant disputes the administrative judge's discrimination findings. PFR File, Tab 1 at 24-26. However, rather than presenting a substantive argument about how the administrative judge may have erred, the appellant has once again referred us to numerous pleadings from the record below, which then cross reference other pleadings, and he does so without explanation. *Id.* (referencing, *e.g.*, IAF, Tab 72 at 5-23, Tab 73 at 4-21). It seems as if the appellant is pointing us back to arguments that primarily concern his long-standing dispute about the agency's authority in Puerto Rico, or his dissatisfaction with other agency matters, where he summarily attributed matters to discrimination and reprisal. *Id.* For example, one of the referenced pleadings from below contains an assertion that the agency offered the appellant a

---

[3] Because the appellant failed to prove that a prohibited consideration was a motivating factor, he necessarily failed to prove it was a "but-for" cause of his removal. *See Pridgen*, 2022 MSPB 31, ¶ 22.

reassignment in 2007 but did not offer to pay relocation expenses, along with the appellant's allegation that the failure to offer relocation expenses was the result of "a pattern of discrimination, harassment, hostile work environment, refusal to answer and / or take corrective action, and disparate treatment." IAF, Tab 72 at 10. This referenced pleading from below also contains an allegation that the agency once considered closing its Puerto Rico Division, in 2012, which the appellant attributed to a "continued . . . pattern of discrimination, harassment and hostile work environment, and disparate treatment towards the Puerto Rico Division and or its employees." *Id*. at 12. These arguments, without more, are unavailing.

The appellant disputes the administrative judge's EEO reprisal findings in a similar manner. PFR File, Tab 1 at 26-27. Rather than present a substantive argument and explanation, the appellant merely asserts that the administrative judge erred, while referring us to the same pleadings from the record below, which then cross reference other pleadings. *Id*. (referencing, *e.g.*, IAF, Tab 72 at 5-23, Tab 73 at 4-7). Again, those pleadings contain a litany of conclusory allegations dating back to 2004, but we found nothing that would meet the appellant's burden of proving his EEO reprisal claim.

*Due Process*

The administrative judge next considered and rejected the appellant's claim that the agency violated his right to due process. ID at 56-57. This claim arose from the deciding official indicating that he relied on its 2012 certification policy, rather than its 2015 certification policy, when he sustained the failure to maintain a condition of employment charge. *Id*. The administrative judge found that the differences between them were not meaningful for purposes of the agency's charge—under either policy, the appellant failed to conduct the inspections and reviews necessary for certification. *Id*.

On review, the appellant asserts that the administrative judge erred in denying this claim. PFR File, Tab 1 at 32-33 (referencing IAF, Tab 63 at 4-6).

He argues that the deciding official's reliance on the 2012 policy, rather than the 2015 policy, shows that the agency acted haphazardly as it attempted to cover up discrimination and reprisal. *Id*.

We have reviewed the 2012 policy and the 2015 policy. *Compare* IAF, Tab 8 at 15-34 (2012 policy), *with* IAF, Tab 60 at 5-35 (2015 policy). Both require that the appellant complete a minimum of 32 roadside inspections and 6 compliance reviews or inspections each year, far more than the appellant completed. *E.g.*, IAF, Tab 8 at 15-16, 19-21, Tab 60 at 9-11, 15-16, 25-26. In the absence of an explanation from the appellant, it is not apparent to us how these policies contain any difference that is meaningful for purposes of his response to the charges or this appeal. Therefore, we agree with the administrative judge. The appellant has not shown that the deciding official's reliance on the 2012 policy denied him due process. *See Palafox v. Department of the Navy*, 124 M.S.P.R. 54, ¶ 9 (2016) (explaining that due process requires that an individual such as the appellant be given a meaningful opportunity to respond before an adverse action).

The appellant failed to prove his claim of reprisal for making disclosures protected under 5 U.S.C. § 2302(b)(8).

Pursuant to the Whistleblower Protection Enhancement Act of 2012 (WPEA), to prevail on a prohibited personnel practice affirmative defense in a chapter 75 appeal that independently could form the basis of an individual right of action appeal, the appellant must first demonstrate by preponderant evidence that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the adverse action. *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-13 (2015) (recognizing that, under the WPEA, an appellant may raise an affirmative defense of whistleblower retaliation based on protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D)); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19

(2013) (stating the foregoing proposition concerning disclosures protected by 5 U.S.C. § 2302(b)(8)). If the appellant meets this burden, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure or activity. *Alarid*, 122 M.S.P.R. 600, ¶ 14.

*Disclosures made between 2004-2006*

As the administrative judge considered the appellant's whistleblower reprisal claim, she first discussed a series of emails dated between 2004-2006. ID at 31-36. She found that the appellant failed to prove that any of these emails contained a protected disclosure. *Id.*

A disclosure is protected under section 2302(b)(8) if it includes information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 7 (2016). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8). *Id.*

For the emails dated between 2004-2006, the administrative judge found that the appellant posed some questions and made some recommendations, but he did not disclose that the agency was violating the law or engaging in any other impropriety. ID at 31-36. The one exception was an email in which the appellant alleged discrimination, but the administrative judge correctly noted that disclosures limited to EEO matters protected by Title VII do not constitute whistleblowing activity under section 2302(b)(8). ID at 35-36; *see Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300, ¶ 13 (2003); *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001).

On review, the appellant asserts that one of his emails, from August 2004, does contain a protected disclosure, despite the administrative judge's finding to the contrary. PFR File, Tab 1 at 21 (referencing IAF, Tab 13 at 397-98). In particular, he directs us to a passage in that email where the appellant stated, "However, there are some PR Division specific HM issues, such as . . . the new HM Permitting Program authority and or applicability in the territories." *Id*. The appellant also seems to assert that a February 2005 email from his supervisor, responding to an email from the appellant, contains a protected disclosure. *Id*. at 22 (referencing IAF, Tab 13 at 72-74). Although we have reviewed the documents which the appellant has referenced, we are not persuaded. The appellant has not articulated any persuasive reason for us to find that he disclosed the type of information protected under section 2302(b)(8) in these emails, nor has he presented any basis for us to conclude that these emails were a contributing factor in his removal, which did not occur until more than 10 years later.

*Additional disclosures made more recently*

The administrative judge next considered the appellant's numerous more recent disclosures, which spanned many years and generally alleged that the agency was violating the law regarding its authority in Puerto Rico, as compared to its authority in a state. ID at 37-42; *see, e.g.*, IAF, Tab 9 at 11-13. For these disclosures, she found that the appellant failed to prove that he had a reasonable belief that he was disclosing a violation of law or other impropriety listed in section 2302(b)(8). *Id*. In the alternative, the administrative judge found that the appellant failed to prove the contributing factor criterion. ID at 42-45. As further detailed below, we agree that the appellant failed to prove that he made a disclosure protected by section 2302(b)(8). However, we must vacate the administrative judge's alternative findings for the contributing factor criterion.

Once again, the appellant has long disputed the agency's authority in Puerto Rico, culminating in the misconduct underlying this removal action.

*Supra* pp. 4-6. He has continued to dispute the agency's authority on review. *E.g.*, PFR File, Tab 1 at 28-32. But, for the reasons previously mentioned, we agree with the administrative judge's determination that the appellant failed to prove that he reasonably believed he was disclosing the type of wrongdoing described in section 2302(b)(8). Even though we have construed the appellant's pleadings liberally, it is still not apparent to us why the appellant believes the agency is violating the law or engaging in any other impropriety. The appellant has continually claimed that the agency was violating statutes or regulations, but he has not provided a reasoned explanation and evidence of the same. For example, the appellant's petition for review asserts, without any explanation or citation to evidence, that "49 USC, Subtitle VI, Part B, Chapter 311, Subchapter III, Safety Regulation, is not applicable to" Puerto Rico, but "the agency is using this statute to conduct compliance/enforcement activities in Puerto Rico." PFR File, Tab 1 at 29. This and the other arguments the appellant presented about his alleged disclosures do not provide us with a basis for reaching a conclusion different than the administrative judge regarding his burden of proving that he made a protected disclosure.

Although we agree with the administrative judge regarding the appellant's failure to prove that he made a disclosure protected by section 2302(b)(8), we disagree with her finding that the appellant also failed to prove the contributing factor criterion. One way of proving that an appellant's protected activity was a contributing factor in a personnel action is the "knowledge/timing" test. *Alarid*, 122 M.S.P.R. 600, ¶ 13. Under this test, an appellant can establish that his prior protected activity was a contributing factor in the challenged action by showing that relevant parties knew of the protected activity and took the personnel action within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the action. *Id*.

As the administrative judge analyzed the contributing factor criterion, she failed to consider the knowledge/timing test, even though one of the many

instances in which the appellant alleged that the agency was violating the law regarding its authority in Puerto Rico was in his response to the proposed removal. ID at 42-45; *e.g.*, IAF, Tab 9 at 11-13. We must therefore vacate her contributing factor analysis. Nevertheless, because the appellant failed to meet the entirety of his burden, the result remains the same for these disclosures.

<u>Remand is required to consider a claim of reprisal for engaging in activity protected under 5 U.S.C. § 2302(b)(9)(C).</u>

Even though the appellant failed to prove that he made a disclosure protected under section 2302(b)(8), our analysis does not stop there. As mentioned above, an appellant may also present a viable affirmative defense of retaliation for engaging in activity protected by sections 2302(b)(9)(A)(i), (B), (C), or (D). Of those, it is particularly noteworthy that an employee engages in activity protected by section 2302(b)(9)(C) by disclosing information to the agency's Office of Inspector General (OIG) or to the Office of Special Counsel (OSC) "in accordance with applicable provisions of law." *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8. Under that broadly worded provision, any disclosure of information to OIG or OSC is protected, regardless of its content, as long as the disclosure is made in accordance with applicable provisions of law. *Id*.

The administrative judge indicated that the appellant filed one complaint with OSC in May 2018, and another complaint with the agency's OIG in October 2018. ID at 42-44. However, she made no mention of section 2302(b)(9) in the initial decision, despite having done so in a prior affirmative defense order. ID at 29-42; IAF, Tab 4 at 13. Instead, the administrative judge was singularly focused on section 2302(b)(8) in her whistleblower reprisal analysis. ID at 29-42. Under the circumstances of this case, we find that remand is appropriate. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (explaining that the administrative judge, as the hearing officer, is in the best position to make factual findings and detailed credibility assessments).

On remand, the administrative judge should afford the parties an opportunity to submit further argument and evidence concerning the appellant's alleged complaints to OIG and OSC. She must then consider *Fisher* and precisely identify any activity the appellant engaged in that is protected under section 2302(b)(9)(C).[4] *Supra* p. 18. If necessary, she must also make complete contributing factor findings, including ones that address the knowledge/timing test. *Supra* p. 17; *see, e.g.*, IAF, Tab 6 at 7, Tab 9 at 16, Tab 13 at 208-10.

If the appellant meets his burden of proving that he engaged in activity protected under section 2302(b)(9)(C) and proving that this activity was a contributing factor in his removal, the burden shifts to the agency. *Supra* p. 14. The administrative judge must then determine whether the agency has proven by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity. *Id.*

We note that the initial decision contains some descriptions of hearing testimony that may be relevant to the parties' burdens. For example, it describes how a couple of officials testified that they knew of the appellant's OIG complaint but denied that it had any role in the appellant's removal. ID at 44. However, those descriptions are not accompanied by credibility findings. To the extent that the administrative judge considers and relies on hearing testimony as she analyzes whether the parties have met their respective burdens, she should ensure that the remand initial decision contains appropriate credibility determinations. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (stating that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include

---

[4] We were able to locate evidence of the appellant's OIG complaint. IAF, Tab 13 at 208-10. We were less successful, though, in locating the appellant's OSC complaint. Instead, we found only numerous mentions of the complaint. *E.g., id*. at 365, 377, 388; ID at 37, 42-43. On remand, the parties should be sure to provide clear citations to the extensive record.

the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

<u>The appellant's remaining arguments are unavailing or premature.</u>

The appellant has made additional arguments that we have considered but do not find persuasive. For example, he describes a line of questioning from the administrative judge, where she noted that the appellant chose to work in Puerto Rico rather than a state, and he argues that this passage from the hearing shows that the administrative judge was biased against him. PFR File, Tab 1 at 4-5 (referencing HT1 at 287). We disagree. In context, it is apparent that the administrative judge's questions and comments were part of her attempt to understand the appellant's arguments, many of which concerned the differences between him and those in a similar position working stateside. *See Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (holding that an administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible") (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980) (finding that in making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators).

The appellant also seems to assert that the administrative judge either did not consider his closing arguments and objections, or she improperly ruled against him concerning the matters discussed within. PFR File, Tab 1 at 6 (referencing I-2 AF, Tabs 3, 5; HT1 at 20-117). However, his assertion is lacking in specificity. He does not direct us to any particular piece of evidence or argument, explain its relevance, or demonstrate that the administrative judge abused her discretion. *See Kingsley v. U.S. Postal Service,* 123 M.S.P.R. 365, ¶ 15 (2016) (recognizing that an administrative judge's failure to mention all of

the evidence of record does not mean that she did not consider it in reaching her decision); *Thomas v. U.S. Postal Service*, 116 M.S.P.R. 453, ¶ 4 (2011) (recognizing that an administrative judge has broad discretion to exclude evidence and witnesses which have not shown to be relevant; to obtain reversal for an abuse of that discretion the petitioning party must show that the excluded evidence was relevant and could have affected the outcome). The same is true of an additional assertion, in which the appellant alleges that the administrative judge erred by excluding other issues he raised, including allegations that the agency improperly administered his home leave and failed to comply with certain travel requirements. PFR File, Tab 1 at 6-7.

Next, the appellant indicates that the administrative judge misstated the date on which his first-level supervisor verbally counselled him regarding certification requirements. PFR File, Tab 1 at 10. On this point, the appellant is correct. The administrative judge mistakenly listed the date as June 2019, rather than June 2018. *Compare* ID at 8 (indicating that the verbal counseling occurred in June 2019), *with* HT2 at 226-27, 229-33 (testimony of Division Administrator). However, this error, contained in the administrative judge's explanation of the circumstances giving rise to this appeal, is inconsequential.

Although we considered the appellant's other arguments and found them unavailing, we have not yet considered his arguments concerning nexus and the reasonableness of the agency's penalty because it would be premature to do so. PFR File, Tab 1 at 18-19, 27-28. Instead, we vacate the administrative judge's findings on those matters. *Hall v. Department of Transportation*, 119 M.S.P.R. 180, ¶ 8 (2013) (vacating an administrative judge's findings for nexus and the penalty because the appeal required remand for the administrative judge to consider the appellant's affirmative defenses), *overruled on other grounds by Thurman v. U.S. Postal Service*, 2022 MSPB 21. If the administrative judge finds that the appellant's affirmative defense of reprisal for activity protected by section 2302(b)(9)(C) fails, she may incorporate her prior findings

regarding nexus and the reasonableness of the agency's penalty in the new decision.

## ORDER

For the reasons discussed above, we remand this case to the field office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.